FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 08, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DENISE R.,<br><br>                     Plaintiff,<br><br>  v.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                   Defendant. | NO:  2:20-CV-00070-FVS<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND DENYING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 14 and 18. This matter was submitted for consideration without oral argument. The Plaintiff is represented by Attorney Rosemary B. Schurman. The Defendant is represented by Special Assistant United States Attorney Danielle R. Mroczek. The Court has reviewed the administrative record, the parties' completed briefing, and is fully informed. For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion for Summary Judgment, ECF No. 14, and **DENIES** Defendant's Motion for Summary Judgment, ECF No. 18.

**JURISDICTION**

Plaintiff Denise R.[1] filed for supplemental security income on February 12, 2010, and disability insurance benefits on February 12, 2010, alleging an onset date of September 7, 2007, in both applications.  Tr. 458-68.  Benefits were denied initially, Tr. 304-11, and upon reconsideration, Tr. 315-19.  Plaintiff appeared at four hearings before an administrative law judge ("ALJ") between October 6, 2009, and March 21, 2013.  Tr. 44-217.  Plaintiff was represented by counsel and testified at the hearings.  *Id.*  The ALJ denied benefits, Tr. 16-43, and the Appeals Council denied review.  Tr. 1.  On April 12, 2016, the United States District Court for the District of Oregon affirmed the ALJ's finding.  Tr. 1357-80.  On May 16, 2018, the Ninth Circuit Court of Appeals vacated and remanded the case to the Commissioner. Tr. 1350-56.  On March 28, 2019, the Appeals Council consolidated subsequent claims for Title II and Title XVI benefits, vacated the ALJ's 2013 finding, and remanded for further administrative proceedings.  Tr. 1383-85.  On October 17, 2017, and November 5, 2019, Plaintiff appeared for additional hearings before the ALJ.  Tr. 1245-1334.  The ALJ denied benefits.  Tr. 1209-44.  The matter is now before this Court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

# BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 51 years old at the time of the most recent hearing.  Tr. 1303. She has her GED, and has had vocational training in construction, phlebotomy, and as a certified nurse assistant  Tr. 115, 1303.  Plaintiff testified that she lived with a roommate/caregiver.  Tr. 1304.  Plaintiff has work history as a nurse assistant, construction worker, data entry clerk, and claims clerk.  Tr. 1329.  Plaintiff testified in 2012 that she cannot work due to fatigue, inability to lift her arms above her shoulders, balance problems, memory and communication issues, and difficulty with concentration and focus,   Tr. 78-79, 120-21.

Plaintiff reported she has "significant" lower back problems, migraines, asthma that is triggered by activity and anxiety, short-term and long-term memory problems, anxiety around strangers, and has falls due to balance problems.  Tr. 1264, 1316-19, 1321.  She has an in-home caregiver 40 hours a week for help with personal hygiene, cooking, cleaning, reminding her to take medication, and "keep[ing] [her] safe."  Tr. 1319-21.  On a "bad day" she has trouble recalling words, processes slowly, and has difficulty following steps.  Tr. 1324.  In 2012, Plaintiff testified that she can stand or walk for 20 minutes before she needs to

stop, and if she tried to work a full-time workday she would have to take a break

from sitting every hour.  Tr. 125-26.

### STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner.  "The court will uphold the ALJ's

conclusion when the evidence is susceptible to more than one rational

interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

2008).  Further, a district court will not reverse an ALJ's decision on account of an

error that is harmless. *Id*.  An error is harmless where it is "inconsequential to the

[ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted).

The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE-STEP EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five,

the burden shifts to the Commissioner to establish that (1) the claimant is capable

of performing other work; and (2) such work "exists in significant numbers in the

national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*,

700 F.3d 386, 389 (9th Cir. 2012).

### ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial

gainful activity since September 7, 2007, the alleged disability onset date. Tr.

1215. At step two, the ALJ found that Plaintiff has the following severe

impairments: cervical degenerative disc disease; lumbar degenerative disc disease;

patellofemoral chondrosis, knees; fibromyalgia; asthma; dementia due to brain

injury; borderline intellectual functioning; depressive disorder; anxiety disorder;

and post-traumatic stress disorder. Tr. 1215. At step three, the ALJ found that

Plaintiff does not have an impairment or combination of impairments that meets or

medically equals the severity of a listed impairment. Tr. 1216. The ALJ then

found that Plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)
> except she can never climb ladders, ropes, or scaffolds; she can
> occasionally balance, stoop, crawl, and climb ramps or stairs; avoid all
> exposure to hazards such as dangerous machinery and unprotected
> heights; she can perform simple, routine tasks with a reasoning level of
> three or less; she can work with only simple and occasional changes in
> the work setting; and she can perform work involving only occasional
> and superficial interaction with the public and coworkers.

Tr. 1217. At step four, the ALJ found that Plaintiff is capable of performing past

relevant work as a data entry clerk. Tr. 1230. In the alternative, at step five, the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: page, marking clerk, and routing clerk.  Tr. 1231. On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from September 7, 2007, through the date of the decision.  Tr. 1232.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 14.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly considered the medical opinion evidence; and

2.  Whether the ALJ erred at step two.

## DISCUSSION

**A. Medical Opinions**

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9

physician's, and an examining physician's opinion carries more weight than a

reviewing physician's.  *Id.*  If a treating or examining physician's opinion is

uncontradicted, the ALJ may reject it only by offering "clear and convincing

reasons that are supported by substantial evidence."  *Bayliss v. Barnhart,* 427 F.3d

1211, 1216 (9th Cir. 2005).  Conversely, "[i]f a treating or examining doctor's

opinion is contradicted by another doctor's opinion, an ALJ may only reject it by

providing specific and legitimate reasons that are supported by substantial

evidence."  *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

"However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings."  *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228

(9th Cir. 2009) (quotation and citation omitted).

> ### 1.  David Hagie, D.O.

First, Plaintiff argues the ALJ erroneously considered the opinions of

treating physician David Hagie, D.O.  ECF No. 14 at 7-14.  In August 2008, Dr.

David Hagie submitted a narrative response to questions regarding Plaintiff's

claimed impairments.  Tr. 701-06.  Dr. Hagie opined that after her 2007 motor

vehicle accident, Plaintiff has suffered "very significantly" in social interactions,

work interactions, employability, her ability to multitask, and keep track of

activities and priorities; and she will require treatment to improve her physical

mobility and her ability "to adapt quickly to change and keep track of multiple

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

tasks, orders of operation, and deadlines for maintaining the flow of work in either

a largely intellectual or a significant physical form of employment and activity."

Tr. 704-05.  Dr. Hagie also opines that Plaintiff would recover "on the order of 90-

95% of her physical capacities which were diminished by result of injuries in the

September 2007 [motor vehicle accident]."  Tr. 703.

       In January 2012, Dr. Hagie completed a "narrative report," that included (1)

diagnoses of headache, cervical strain, and dysfunctions of cranium, cervicals,

thoracics, lumbars, and sacrum; (2) examination results of reduction of upper

extremity muscle strength symmetrically bilaterally, diminished hip flexion

bilaterally, pain with movement, tenderness to palpation, and imbalance of the

cervical spine; (3) a review of examining medical opinion evidence and lay witness

statements; and (4) his opinion that Plaintiff's mental sharpness, grasp of her

personal history, and details on other subjects, "have diminished dramatically as a

result of her motor vehicle accident [].  She has for several years been unable to

achieve and/or maintain full-time or even significant part-time employment at any

job." Tr. 1042-45.  Dr. Hagie also opined that Plaintiff's prognosis for recovery is

"minimal to nonexistent, given her physical limitations, and her cognitive/psycho-

emotional disabilities."  Tr. 1045.

       Also in January 2012, Dr. Hagie noted clinical findings of headache,

traumatic brain injury, sciatica, cervical strain, lumbar strain, and memory and

concentration lapses.  Tr. 1048.  He opined that Plaintiff could sit for 4 hours in an

eight-hour work day; stand/walk for 4 hours in an eight-hour workday; would need

to get up and move around "as much as 1-2 hours, [or] as little as 15 minutes," for

1-5 minutes at a time; "constantly" experience symptoms severe enough to

interfere with attention and concentration; is incapable of even "low stress" in the

workplace; "cannot maintain task focus, concentration, learning or memory";

would need to take unscheduled breaks to rest every 2-4 hours for 15 minutes at a

time; and would be absent from work more than three times a month as a result of

her impairments. Tr. 1048-55. The ALJ gave little weight to Dr. Hagie's opinions

because they were unsupported by his treatment notes, including Plaintiff's reports

of "high functioning activities of daily living"; they were inconsistent with

objective medical evidence and "other medical examinations from this period";

and his own opinions were inconsistent with each other. Tr. 1225-26.

As an initial matter, Plaintiff argues that (1) the ALJ's finding that Dr.

Hagie's treatment notes did not support his conclusion that Plaintiff is unable to

work is "contrary to the Ninth Circuit's decision"; and (2) the ALJ erred by failing

to follow the Ninth Circuit's order to examine the factors cited in 20 C.F.R. §

404.1527 for determining the weight of medical opinions. ECF No. 14 at 14, 19

(citing Tr. 1356). The "law of the case" doctrine prohibits a court from

considering an issue that already has been decided by that same court or a higher

court in the same case, primarily in the name of efficiency. *Stacy v. Colvin*, 825

F.3d 563, 567 (9th Cir. 2016). The rule of mandate is similar to, but broader than,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

1   the law of the case doctrine.  The rule provides that any "district court that has

2   received the mandate of an appellate court cannot vary or examine that mandate for

3   any purpose other than executing it."  *Id.* at 567-68.  In *Stacy*, the Ninth Circuit

4   held that both of these appellate principles apply in the Social Security context. *Id.*

5   at 567; *see also Ischay v. Barnhart,* 383 F.Supp.2d 1199, 1214 (C.D. Cal. 2005)

6   ("The rule of mandate requires that, on remand, the lower court's actions must be

7   consistent with both the letter and the spirit of the higher court's decision.")).

8           First, Plaintiff argues that "[s]ince the [Ninth Circuit] Court found that Dr.

9   Hagie's opinions were supported by his treatment notes, as well as his

10  consideration of three neuropsych reports and one consultative report from Dr.

11  Branch, it was contrary to law for the ALJ to make the opposite finding."  ECF No.

12  14 at 11-12.  However, the specific finding by the Court was that the "record does

13  not support the [prior] ALJ's assertion that Dr. Hagie's opinions relied 'in large

14  part' on [Plaintiff's] self-reports.  To the contrary, each of Dr. Hagie's treatment

15  notes discussed *both* his objective findings and [Plaintiff's] subjective complaints."

16  Tr. 1352 (emphasis in original).  The Ninth Circuit additionally did note that Dr.

17  Hagie reviewed objective medical imaging test results, including MRIs of

18  Plaintiff's brain and spine; he noted that aspects of his opinion relied on clinical

19  observation; and he reviewed neuropsychological testing and consultative

20  opinions. Tr. 1352.  However, as noted by Defendant, the Ninth Circuit did not

21  expressly order the ALJ to find on remand that Dr. Hagie's opinions were

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

1  supported by his treatment notes; rather, the ALJ was specifically directed to

2  reassess Dr. Hagie's opinion including "the supportability and explanation

3  provided" for his opinion.  ECF No. 18 at 9-10. Thus, the Court finds no error in

4  the ALJ's consideration of the support for Dr. Hagie's opinions within his own

5  treatment notes.

6          That said, as noted by Plaintiff, the Ninth Circuit vacated and remanded for

7  further proceedings, with specific instruction that the ALJ consider Dr. Hagie's

8  opinion according to the factors prescribed in 20 C.F.R. § 404.1527 for

9  determining the weight of medical opinions, "including the length, nature and

10  extent of the treating relationship, the frequency of examination and the

11  supportability and explanation provided for Dr. Hagie's opinions."  Tr. 1356 n. 1

12  (citing *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017).)  Here, the ALJ did

13  not consider the length, nature and extent of the treating relationship, or the

14  frequency of examination.  *See* Tr. 1225-26.  These factors are particularly relevant

15  to the assessment of Dr. Hagie's treating opinions, which, as noted in the Ninth

16  Circuit opinion, were based on three years of treatments and clinical observations.

17  Tr. 1355-56.  The ALJ arguably did consider the "supportability and explanation"

18  provided for Dr. Hagie's opinion, as mandated by the Ninth Circuit decision.  First,

19  the ALJ found that Dr. Hagie's "longitudinal treatment notes" do not support his

20  conclusion that Plaintiff is unable to work.  Tr. 1225.  The ALJ may properly reject

21  a medical opinion if it is inconsistent with the provider's own treatment notes.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

1    *Tommasetti*, 533 F.3d at 1041.  Specifically, as to Plaintiff's claimed physical

2    limitations, the ALJ found Dr. Hagie's notes "contain few, if any, observations of

3    any deficits in gait, sensation, range of motion, or strength.  Instead, Dr. Hagie's

4    treatment notes contain only brief and largely unremarkable observations related to

5    his manipulations and adjustments."  Tr. 1225.  In support of this finding, the ALJ

6    generally cites a selection of Dr. Hagie's treatment notes from 2009 through 2013,

7    with objective findings that include negative standing and seated flexion tests; and

8    findings of "level" lumbar medial malleoli, tibial plateau, ASISs, PSISs, sulci,

9    ILAs and ischial tuberosities.  Tr. 1225 (citing Tr.  873-74, 876, 878, 1001,1003,

10   1006, 1011, 1014, 1106, 1109, 1130, 1137, 1887, 1899, 1996, 1998-99).

11          However, while not acknowledged by the ALJ, these same treatment records

12   also reveal consistently positive standing and seated flexion tests, tension, cervical

13   and lumbar tenderness, psycho-emotional difficulties, balance issues, hypertonic

14   muscles, pain with extension, limited range of motion and restricted rotation, and

15   prescription of medication for physical and mental impairments.  *See id*.

16   Moreover, several of the treatment notes cited by the ALJ include only abnormal

17   findings upon examination, and one of the cited treatment notes merely recorded

18   Plaintiff's request to refill her prescription via a telephone call, with no objective

19   or subjective findings.  *See* Tr. 1225 (citing Tr. 1009, 1013, 1021, 1025, 1108,

20   1123, 1129).  When weighing an opinion, the ALJ must do more than state a

21   conclusion.  Rather, the ALJ must "set forth his own interpretations and explain

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

1  why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715,

2  725 (9th Cir. 1998).  "This can be done by setting out a detailed and thorough

3  summary of the facts and conflicting clinical evidence, stating his interpretation

4  thereof, and making findings." *Id*.  Here, the ALJ fails to summarize and interpret

5  the entirety of Dr. Hagie's evaluations; thus, the ALJ's conclusory finding that Dr.

6  Hagie's treatment notes do not support his conclusions is not supported by

7  substantial evidence.  This was not a specific and legitimate reason for the ALJ to

8  reject Dr. Hagie's opinions.

9         Second, the ALJ found that Dr. Hagie's

10        treatment notes document [Plaintiff's] high functioning activities of
          daily living, including her ongoing physical work and horse-riding.  In
11        fact, in one of his last treatment notes, Dr. Hagie noted that [Plaintiff's]
          complaints of pain were increased when she was 'less active' and
12        speculated that 'it might be her inactivity, in particular her lack of time
          working with and riding horses, which has her hurting more.'

13 Tr. 1225 (citing Tr. 1998).  An ALJ may discount a medical opinion that is

14 inconsistent with a claimant's reported functioning.  *See Morgan v. Comm'r of Soc.*

15 *Sec. Admin*, 169 F.3d 595, 601-02 (1999).  However, in support of this finding, the

16 ALJ's decision identifies only a handful of activities reported to Dr. Hagie over the

17 course of their treatment relationship, including: a report of moving "two rooms of

18 furniture" by herself in April 2011; riding and caring for horses in January 2012;

19 "doing a fair amount of barn work and riding horses a lot" in April 2010; working

20 on planning her wedding in October 2012; and injuring herself while playing with

21 her grandchildren in February 2012.  Tr. 1001, 1015, 1030, 1108, 1129, 1221.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

1    However, as noted by Plaintiff, the ALJ fails to address how "[d]oing

2    undefined farm chores for an undefined period and dealing with horses,"

3    contradicts Dr. Hagie's 2012 opinion that Plaintiff is able to walk and sit for 4

4    hours a day; nor does the ALJ cite evidence of high-functioning activities of *daily*

5    living.  ECF No. 14 at 12.  Moreover, Dr. Hagie's 2012 opinion that Plaintiff is

6    unable to maintain competitive part-time or full-time work is accompanied by his

7    own acknowledgement that Plaintiff "has been able to ride horses to a limited

8    degree, which she describes as 'her therapy', both physically (allowing her some

9    skeletal mobility without a great deal of muscular activity or stressing, similar to

10   others of my patients who ride horses) and psycho emotionally."  Tr. 1045.  Based

11   on the foregoing, the Court finds that the ALJ's rejection of Dr. Hagie's opinions

12   because "his treatment notes document [Plaintiff's] high functioning activities of

13   daily living," is not supported by substantial evidence from Dr. Hagie's

14   longitudinal treatment record.  *See Fair*, 885 F.2d at 603 (claimant need not be

15   utterly incapacitated in order to be eligible for benefits); *Orn*, 495 F.3d at 639 ("the

16   mere fact that a plaintiff has carried on certain activities . . . does not in any way

17   detract from her credibility as to her overall disability.").  This was not a specific

18   and legitimate reason to reject Dr. Hagie's treating opinions.

19       Third, the ALJ noted that Dr. Hagie's 2008 opinion that he expected

20   Plaintiff to return to 90 to 95 percent of her former functioning, was "a far cry from

21   [his] later opinions in 2012."  Tr. 1226.  In support of this finding, the ALJ found

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17

this "could be explained if there had been a progression in his objective observations of [Plaintiff's] impairments, but his findings remained generally consistent from the beginning of the adjudicative period to near the end of his treatment of [Plaintiff]." Tr. 1226 (citing Tr. 711-12, 1999). The ALJ also noted that in 2008 Dr. Hagie indicated that an opinion would "require physical capacity evaluation or functional capacity evaluation." Tr. 1226. Internal inconsistencies within a physician's report constitute relevant evidence when weighing medical opinions. *Morgan*, 169 F.3d at 603. However, as noted by Plaintiff, the "fact that Dr. Hagie's opinions changed after treating her for 4 additional years and watching the lack of progress he initially suspected," is not a legitimate reason to reject his opinions. ECF No. 14 at 12. Moreover, as noted by the Ninth Circuit, Dr. Hagie's 2012 opinion, in contrast to his earlier opinions, "took account of the evaluations of numerous other physicians; [and] rested on nearly three additional years of treatment and clinical observations." Tr. 1355-56. Finally, while Dr. Hagie opined in August 2008 that Plaintiff would recover "on the order of 90-95% of her physical capacities which were diminished by result of injuries in the September 2007" motor vehicle accident, he also specifically noted that his opinion "should be qualified by means of physical capacity or functional capacity evaluations, both perhaps at the one-year mark and again at the two-year mark to see how [Plaintiff] has progressed." Tr. 703-04. The Court is unable to perceive an inconsistency between Dr. Hagie's qualified prediction in 2008 that Plaintiff would regain her

physical capacities, and the 2012 functional capacity evaluation that he also

recommended in 2008.  For all of these reasons, the Court finds any alleged

inconsistency between Dr. Hagie's opinions was not a specific and legitimate

reason, supported by substantial evidence, for the ALJ to reject his treating

opinions.

Fourth, the ALJ found Dr. Hagie's opinion is inconsistent with "the

remaining objective medical evidence."  Tr. 1226.  An ALJ may discount an

opinion that is conclusory, brief, and unsupported by the record as a whole, or by

objective medical findings.  *Batson*, 359 F.3d at 1195.  However, the Court notes

that Dr. Hagie ordered the 2007 MRI and cited it in support of his diagnosis, while

the remaining "medical imaging" cited by the ALJ was taken after Dr. Hagie's

2012 opinions.  Tr. 1226 (citing Tr. 3338, 3347, 3353, 3369-70).  Furthermore, the

Ninth Circuit specifically found that the prior ALJ

> also rejected Dr. Hagie's opinions by stating, without elaboration, that the
> 'objective medical evidence does not support the doctor's opinion.'  But as
> we have previously held, a bare assertion by an ALJ that the 'objective
> medical evidence' does not support a physician's opinion fails to constitute a
> specific and legitimate reason.  Instead, the ALJ must 'set out a detailed and
> thorough summary of the facts and conflicting evidence, stat[e] his
> interpretation thereof, and mak[e] findings.'

Tr. 1353 (citing *Reddick*, 157 at 725; *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th

Cir. 1988)).  Here, in support of this finding, the ALJ asserted that "[m]edical

imaging contemporaneous to Dr. Hagie's treatment generally returned only mild

findings," and cited, without elaboration, a 2013 MRI of Plaintiff's lumbar spine, a

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19

2007 MRI of Plaintiff's cervical spine, a 2014 CT of Plaintiff's cervical spine,

2013 imaging of Plaintiff's bilateral knees, and "other medical examinations from

this period [that] consistently showed no more than moderate limitations." [2] Tr.

1226.  However, as identified by the Ninth Circuit order, the ALJ in this case again

failed to properly summarize and interpret the entirety of the objective examination

findings, including, as discussed above, Dr. Hagie's own clinical findings; nor did

the ALJ "set forth his own interpretations and explain why they, rather than the

doctors', are correct."  Tr. 26; *see Reddick*, 157 F.3d at 725.  Thus, the ALJ's

conclusory rejection of Dr. Hagie's treating opinions without the requisite

interpretations of the "facts and conflicting clinical evidence," is not supported by

substantial evidence.  This was not a specific and legitimate reason to reject Dr.

Hagie's opinions, and they must be reconsidered on remand.

---

[2] Defendant argues that the ALJ properly rejected Dr. Hagie's opinions because

they were "inconsistent with other providers' observations regarding Plaintiff's

functioning."  ECF No. 18 at 11.  The Court is not permitted to consider reasoning

that was not offered by the ALJ in the decision.  *Bray*, 554 F.3d at 1226 (the Court

"review[s] the ALJ's decision based on the reasoning and factual findings offered

by the ALJ—not *post hoc* rationalizations that attempt to intuit what the

adjudicator may have been thinking.").

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20

1         Finally, as to Plaintiff's claimed mental impairments, the ALJ found (1) Dr.

2  Hagie's opinions were not supported by his longitudinal treatment notes, and (2)

3  his opinions were not "consistent with the observations of Plaintiff's other

4  providers regarding mental functioning." Tr. 1226. First, in support of this

5  finding, the ALJ cites ongoing treatment notes by Dr. Hagie that "do not address

6  any psychological impairments and document few objective findings of any

7  ongoing mental deficits." Tr. 1226. The ALJ also cites one report by Dr. Hagie

8  that Plaintiff had "a pretty good focus," and another observation that "while she

9  had some memory lapses, she could recall dates." Tr. 1226 (citing Tr. 1914). In

10  general, it is reasonable for the ALJ to discount a physician's opinion when it is

11  unsupported by the physician's treatment notes. *See Connett v. Barnhart*, 340 F.3d

12  871, 875 (9th Cir. 2003). However, the Court's independent review of the record

13  indicates that in 2008 Dr. Hagie observed that after her motor vehicle accident

14  Plaintiff was significantly "scattered," prone to confusion, took a long time to

15  formulate answers to questions, had difficulty "dealing with issues of change," and

16  had difficulty keeping track of details; and in 2012 Dr. Hagie noted that Plaintiff's

17  "mental sharpness, and her grasp of her personal history, and details on other

18  subjects, have diminished dramatically." Tr. 702, 1045.

19         Second, the ALJ found Dr. Hagie's opinions were "inconsistent with

20  observations by other providers" regarding Plaintiff's mental functioning; and in

21  support of this finding the ALJ cites (1) Dr. Villanueva's 2009 letter that observed

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 21

Plaintiff was "primarily sad," and demonstrated "full range, with occasional bright

affect," and (2) a 2014 treatment note when Plaintiff presented for a respiratory

issue, that indicated she had normal mood, affect, behavior, judgment, and thought

content.  Tr. 1226 (citing Tr. 2758).  The consistency of a medical opinion with the

record as a whole is a relevant factor in evaluating that medical opinion.  *Orn*, 495

F.3d at 631.  However, the ALJ failed to consider that Dr. Hagie reviewed the

results neuropsychiatric examination and objective testing by Grant C. Rawlins,

Ph.D., Brad Kauder, Psy.D., Michael Villanueva, Psy.D., and Benjamin Branch,

D.O.  Tr. 1044, 1049.  As indicated in the record, Dr. Hagie noted that these mental

health providers found that Plaintiff has "severely deteriorated overall intellectual

and social functioning"; "dementia due to head trauma"; borderline intellectual

functioning; and "current functional deficits at this time [that] appear to be related

to late effects of traumatic brain injury, and further significant functional

improvement is not anticipated."  *See* Tr. 859-60, 935, 1044. As noted in the Ninth

Circuit decision, and "[a]s [Plaintiff's] treating physician, Dr. Hagie's ability to

integrate medical information and reports from other physicians into his

assessment of [Plaintiff's] functional capacity and prognosis is an important reason

why his opinion is presumptively entitled to greater weight."  Tr. 1352, 1355-56.

Defendant argues that Dr. Hagie's opinion as to Plaintiff's mental limitations

is "undercut" by Dr. Thompson's examination findings in 2016 that Plaintiff's

"behavior suggests possible characterological issues, actual cognitive deficits,

and/or presentation management to appear more impaired.  Until she is consistent in her presentation and motivated to participate in a forthright manner, her actual difficulties will be difficult to assess."  ECF No. 18 at 13.  However, while the ALJ generally finds that Dr. Hagie's opinion is "inconsistent" with the "observations of other providers," the ALJ does not cite to Dr. Thompson's opinion, nor does he set forth any interpretation of why Dr. Thompson's findings were inconsistent with Dr. Hagie's opined limitations.  The Court is not permitted to consider this reasoning that was not offered by the ALJ in the decision.  *Bray*, 554 F.3d at 1226 (the Court "review[s] the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").  Based on the foregoing, and in light of the need to remand for reconsideration of Dr. Hagie's opinions as to Plaintiff's claimed physical impairments, as discussed in detail above, the ALJ should also reconsider Dr. Hagie's opinions as to Plaintiff's claimed mental health and cognitive impairments.

### 2.  Additional Opinion Evidence

Plaintiff additionally argues that the ALJ erroneously considered the opinions of treating provider Leonard Wilk, M.D., examining provider Grant Rawlins, Ph.D., treating provider Benjamin Branch, D.O., treating provider Paul Larsen, M.D., and the "nonexamining state agency physicians."  ECF No. 14 at 6-21.  However, in light of the need for reconsideration of Dr. Hagie's opinions

according to the factors prescribed in 20 C.F.R. § 404.1527 for assessing a treating

physician's opinion, as indicated in the Ninth Circuit remand order, "[b]ecause the

ALJ's erroneous rejection of Dr. Hagie's opinion alone warrants reversal, we do

not reach [Plaintiff's] other arguments, and instead [] remand for further

proceedings.  We note that if the ALJ accords controlling weight to Dr. Hagie's

opinion on remand, reaching the other issues in the case would be unnecessary;

both vocational experts testified that if the limitations to which Dr. Hagie opined

were credited, [Plaintiff] would be precluded from all work."  Tr. 1356.  Moreover,

because the ALJ's analysis of the remaining opinion evidence relied, at least in

part, on whether they were "consistent" with other opinions in the record,

including Dr. Hagie's treating opinions, the Court declines to address this

challenge in detail here.  *See* Tr. 1222-30.  For all of these reasons, and in light of

the need to reconsider Dr. Hagie's treating opinions, as discussed in detail above,

the ALJ should also reevaluate the opinions of Dr. Wilk, Dr. Rawlins, Dr. Branch,

Dr. Larsen, along with all relevant medical opinion evidence, on remand.

   **B.  Step Two**

      Plaintiff additionally challenges the ALJ's assessment of Plaintiff's

migraines at step two.  ECF No. 14 at 4-6.  Because the analysis of Plaintiff's

migraines is dependent on the ALJ's reevaluation of the medical evidence, and in

particular Dr. Hagie's opinions referencing a diagnosis of "constant" headaches,

which the ALJ is instructed to reconsider on remand, the Court declines to address

1  this challenge in detail here.  *See, e.g.,* Tr. 711, 1048-50.  On remand, the ALJ is

2  instructed to reconsider Plaintiff's symptom claims and conduct a new sequential

3  analysis, including a reassessment of the step five finding.

4                                          **REMEDY**

5          The decision whether to remand for further proceedings or reverse and

6  award benefits is within the discretion of the district court.  *McAllister v. Sullivan*,

7  888 F.2d 599, 603 (9th Cir. 1989).  An immediate award of benefits is appropriate

8  where "no useful purpose would be served by further administrative proceedings,

9  or where the record has been thoroughly developed," *Varney v. Sec'y of Health &*

10  *Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by

11  remand would be "unduly burdensome[.]"  *Terry v. Sullivan*, 903 F.2d 1273, 1280

12  (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (noting that a

13  district court may abuse its discretion not to remand for benefits when all of these

14  conditions are met).  This policy is based on the "need to expedite disability

15  claims."  *Varney*, 859 F.2d at 1401.  But where there are outstanding issues that

16  must be resolved before a determination can be made, and it is not clear from the

17  record that the ALJ would be required to find a claimant disabled if all the

18  evidence were properly evaluated, remand is appropriate.  *See Benecke v.*

19  *Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172,

20  1179-80 (9th Cir. 2000).

21

The Court finds that further administrative proceedings are appropriate.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose).  Here, the ALJ improperly considered Dr. Hagie's treating opinion, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence.  "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101.  Instead, the Court remands this case for further proceedings.  On remand, the ALJ should reconsider Dr. Hagie's opinions, and if necessary, the remaining medical opinion evidence, and provide legally sufficient reasons for evaluating the opinions, supported by substantial evidence.  If necessary, the ALJ should order additional consultative examinations and, if appropriate, take additional testimony from a medical expert.  In addition, the ALJ should reconsider the steps in the sequential analysis, reassess Plaintiff's RFC and take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

**ACCORDINGLY, IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14,** is **GRANTED,** and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 26

1    2.  Defendant's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

2    3.  Application for attorney fees may be filed by separate motion.

3    The District Court Clerk is directed to enter this Order and provide copies to

4    counsel.  Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

5    **DATED** September 8, 2021.

6

7                                    *s/ Rosanna Malouf Peterson*
                                     ROSANNA MALOUF PETERSON
                                     United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 27